IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 14, 2000 Session

## CHARLOTTE ALICE ALLEN v. JAMES DOUGLAS ALLEN

**A Direct Appeal from the Chancery Court for Davidson County**
**No. 98-01-0111     The Honorable Carol A. Catalano, Chancellor**

---

**No. M1999-00748-COA-R3-CV - Filed October 10, 2000**

---

In this divorce case, Husband appeals the trial court's decree as it deals with the division of the marital property (including an award to Wife a part of military retirement), alimony, and child support. We affirm as modified.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court is Modified in Part, Reversed in Part, Affirmed in Part, and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALLAN E. HIGHERS, J. and HOLLY KIRBY LILLARD, J., joined.

Troy L. Brooks, Clarksville, For Appellant, James Douglas Allen

Gregory D. Smith, Clarksville, For Appellee, Charlotte Alice Allen

### OPINION

On January 26, 1998, plaintiff/appellee, Charlotte Alice Allen ("Wife"), filed a complaint for absolute divorce against defendant/appellant, James Douglas Allen ("Husband"), alleging inappropriate marital conduct, cruel and inhuman treatment, and irreconcilable differences. Husband filed answer and counterclaim on February 6, 1998.

Husband and Wife were married on June 6, 1982, in Fort Still, Oklahoma. There is one child of this marriage, Christopher Earl Allen, born on May 20, 1987. Christopher has been diagnosed with Attention Defect Hyperactive Disorder (ADHD). On January 26, 1998, Wife filed for divorce alleging grounds of inappropriate marital conduct, cruel and inhuman treatment, and irreconcilable differences. Wife avers that the parties were separated in Clarksville, Montgomery County, Tennessee, and that Husband had been liquidating the assets of the parties' antique business. A trial was held on July 12, 1999. On September 24, 1999, the court entered an order, with extensive findings of fact. The order provides in pertinent part:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court as follows:

1.   That the Complainant is granted a divorce on the ground of Inappropriate Marital Conduct.   That the Counter-Complaint is hereby dismissed.

2.   It would appear that the Defendant did retire from the United States Army with more than Twenty (20) years seven (7) months of military service and the Court finds that there would be thirteen (13) years of marriage during the time of this military service.

3.   That the Defendant's retired pay from the United States Army is $966.75 per month and that the Defendant receives $337.00 per month as an additional payment based upon a Veteran Administration Disability.

4.   Based upon the time of marriage during the time of military service, the Complainant is awarded fifty percent (50%) of the Defendant's military retirement.   The Complainant is awarded no portion of the Defendant's VA Disability Benefit.

*      *      *      *      *

12.  That the $3,300.00 per month gross profit along with the $483.37 military retirement and $337.00 VA Disability Benefit would result in a net monthly income of $4,120.38.  Twenty one percent (21%) of this would result in a child support amount of $650.00 per month. The Defendant shall pay this support to the Complainant to begin August 1, 1999 and by the first day of each month thereafter.

13.  That the Defendant shall sign the child up for Tri-Care Prime within thirty (30) days and should pay all premiums for Tri-Care Prime.

14.  That the Complainant and Defendant should equally divide all medical, orthodontic, dental, psychological, therapy, and any and all other counseling, medical or dental related expenses and that the Defendant is to reimburse the Complainant $608.38 for past medical expenses not covered by the insurance. The Complainant is awarded a judgment for this amount for which execution may issue.

15. That the Complainant is awarded the marital home located at 333 Deepwood Trial, Clarksville, TN 37042 and the Defendant is divested of any interest he may have in the said marital home and the Complainant is hereby vested with the Defendant's interest.

16. That the Complainant shall be responsible for the monthly mortgage on the home and should hold the Defendant harmless against this debt.

17. That the Defendant is awarded the Sign Of The Times antique business and its assets other than those in the basement of the marital home.

18. That the parties had $14,600.00 in a joint savings account of which the Defendant took $14,000.00. The Complainant lived off of $6,000.00 including a $5,000.00 cash advance on a credit card, the Court is not satisfied that the $5,000.00 was repaid by the Complainant to the Defendant to be paid against this debt.

19. That the [$14,000.00 that the] Defendant took plus the $5,000.00 cash advance that the Complainant took would total $19,000.00. Equally divided would be $9,500.00 to each party [sic]. Since the Complainant received only $5,000.00 off of the credit card cash advance, there is a remaining balance of $4,500.00 to equally divide this sum between the two parties. The Defendant shall pay the sum of $4,500.00 to the complainant as a division of the cash and savings of the parties. The Complaint is awarded a judgment for this amount for which execution may issue.

20. That the Defendant shall pay the sum of $550.00 per month as rehabilitative alimony to the Complainant for a total of five (5) years. This shall begin on August 1, 1999.

21. That the Defendant is awarded the items he requested that he be given in the list attached to his Local Rule 18.02 Statement. The Defendant is further awarded the guns as his separate property which were his before the marriage.

22. That the Defendant's mother is awarded the items which she had previously given to the parties, being a table, a picture, the alabaster item, the gas grill and the Timberwolf chain saw.

23. That all of the remaining personal property of the marriage is awarded to the Complainant including the remaining $500.00 of the business property in the basement of the marital residence.

24. That the Defendant is hereby awarded the 1991 Ford Van and the 1997 Chevy Van which total a value of $27,000.00. That the Complaint is awarded the 1989 Pontiac Grand Am.

25. That the Complainant should continue to pay the Citibank Credit Card and the Bravo Card. The Defendant is ordered to pay all of the remaining debts of the marriage including all credit cards and loans. The Defendant shall maintain these accounts in a current status, paying each bill monthly prior to the due date and shall hold the Complainant harmless against the balance of the marital debts.

26. That the Defendant is ordered to pay $1,000.00 of the Complainant's attorney's fees for which a judgment is granted to the Complainant and execution may issue.

It is from this order that Husband appeals, presenting the following issues as stated in his brief:

I. Whether the trial court erred in the computation of appellant's net monthly income?

II. Whether the trial court erred by awarding appellee alimony exceeding her needs and exceeding appellant's ability to pay?

III. Whether the trial court erred by awarding child support based upon an erroneous computation of appellant's net monthly income?

IV. Whether the trial court erred in the distribution of marital debt?

V. Whether the trial court erred in the distribution of marital property?

VI. Whether the trial court erred by requiring appellant to pay appellee attorney's fees?

VII. Whether the trial court erred by awarding appellee fifty percent of the appellant's military retirement?

VIII. Whether the trial court erred in its calculation of an award of monies in the parties' joint bank account?

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. Tenn. R. App. P. 13(d).

We begin by addressing issues I and III together. Husband contends that the trial court erred in the computation of his income. He asserts that the evidence preponderates against the finding that his net monthly income is $4,120.37.[1] The record reflects that Husband produced an income and expense statement reflecting his current economic position, and tax returns for the years 1997 and 1998. He testified that his antique business lost $3,233.00 for calendar year 1998 and that his sole income at the time of trial was his military retirement and disability pay. Husband also asserts that the trial court disregarded all evidence, except the 1997 tax return in computation of his monthly income, and that 1997 was one of the best years that he had in his business since it began in 1984.

The factors to consider in determining the amount of child support to be paid by an obligor parent are found in the guidelines published by the Tennessee Department of Human Services. *See* Tenn. Comp. R. & Regs. 12402-4-.03 (1994). Hence, the calculation of both alimony and child support are based, at least in part, on the trial court's findings regarding the obligor spouse's net income or "earning capacity." *See Siegel v. Siegel,* No. 02A01-9708-CH-00198, 1999 WL 135090, *2 (Tenn. Ct. App. March 5, 1999).

In some cases, a court may deviate from the Tennessee Child Support Guidelines:

> In cases where initial support is being set, a judgment must be entered to include an amount due for monthly support from the date of the child's birth or date of separation or date of abandonment whichever is appropriate, until the current support order is entered. This amount must be calculated based upon the guidelines using the average income of the obligor over the past two years and is presumed to be correct unless rebutted by either party.

Tenn. Comp. R. & Regs. tit 10, ch. 1240-2-4-.04(1)(e) (amended Oct. 1997). This provision reflects a legislative intent that when the amount of a obligor parent's income is not known, an average should be taken, and a period of two years is an appropriate period of time to average the income. *Brown v. Brown,* No. 03A01-9812-CV-00417, 1999 WL 552854, *5 (Tenn. Ct. App. July 28, 1999). However, the regulation also indicates that the presumption that an average of two years' income as an indication of the proper basis for child support may be rebutted. *Id.* The Child

---

[1] This figure includes $3,300.00 per month imputed income from Husband's business, Husband's disability pay of $337.00 per month, and $483.37 as one-half of Husband's retirement pay.

Support Guidelines allow for the imputation of income to an obligor parent who is willfully and voluntarily unemployed or underemployed. *Beem v. Beem*, No. 02A01-9511-CV-00252, 1996 WL 636491,*3 (Tenn. Ct. App. Nov. 5, 1996). To determine a child support award based on earning capacity rather than actual net income, there must be a threshold finding that the obligor parent is willfully and voluntarily underemployed or unemployed. *Stephenson v. Stephenson,* No. 01A01-9212-CH-00488, 1993 WL 298908, *4 (Tenn. Ct. App. Aug.6, 1993); *Marcus v. Marcus,* No. 02A01-9611-CV-00286, 1998 WL 29645, *3 ( Tenn. Ct. App. Jan. 28, 1998).

The issue before the Tennessee Supreme Court in *Brooks v. Brooks,* 992 S.W.2d 403 (Tenn. 1999), was whether Mr. Brooks's child support obligation should be based on his 1995 income of $25,888.00 or upon his earning potential. In making its determination, the **Brooks** Court found that the record indicated that the Court of Appeals was correct in concluding that "Mr. Brooks was willfully and voluntarily underemployed at the time of the evidentiary hearing in July 1995." *Id.* at 407. In so finding, the **Brooks** Court cited the Guidelines, which provide: "If an obligor is willfully and voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience." Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(d). *Id.* Having found Mr. Brooks voluntarily underemployed, the Court imputed a yearly income of $102,087.00, based on income made prior to liquidating his business. *Id.* That amount was equal to the amount of profits that the business generated one year prior to the hearing. *Id.*

For one who is self-employed, Tennessee courts have acknowledged the difficulty in determining income.

> [W]here the obligor spouse is self-employed, the potential exists for the obligor to manipulate his reported income either by failing to aggressively solicit business or by inflating his business expenses, thereby minimizing his income. *See, e.g., Koch v. Koch,* 874 S.W.2d 571, 578 (Tenn. Ct. App. 1993) (recognizing difficulty of establishing husband's self-employment income from commercial painting business).

*Beem v. Beem*, at *4. Where a self-employed obligor parent can control the salary that he receives, a court may be required to determine "whether the potential exists for the obligor to manipulate his reported income either by failing to aggressively solicit business or by inflating his expenses, thereby minimizing his income." *Sandusky v. Sandusky,*, No. 01A01-9808-CH-00416, 1999 WL 734531, *4 (Tenn Ct. App. Sept. 22, 1999) (quoting **Beem**, at *4). An obligor parent will not be allowed to avoid a support obligation by arranging a smaller salary while the business prospers. *Id.* at *5.

In the instant case , the trial court made an attempt to examine whether there was an opportunity for Husband to manipulate his income. An order was entered March 30, 1998, stating:

> That the Defendant should be able to continue to run the family business but that he should keep a journal of all items purchased,

from whom it is purchased and the amount of the purchase price. Further he should keep a journal of all sales of items, to whom the item is sold and the amount of the sale price.

In an income and expense statement dated June 25, 1998, Husband reports monthly income of $1,303.75 from his military retirement payment of $966.75 and a VA disability payment of $337.00 per month. He reported total monthly expenses of $3,569.65, including $550.00 in child support. Husband claimed to have a deficit of $2,565.95 per month.

Concerning Husband's antique business, the trial court's June 26, 1998 order states, *inter alia* that Husband had not removed the property from the basement of the marital home although it was released by the court in a hearing on March 16, 1998, pursuant to his statements in court that his business was shut down by keeping him from his property. The court further found that Husband did not produce documentation detailing the items purchased and sold in his antique business as ordered by the court. The trial court stated that pursuant to Husband's testimony, the court was aware that he had participated in two antique shows and bought and sold items, but that the court remained unsure if his expenses of the business outweighed his income. The court ordered Husband to produce his 1997 tax return and income and expense statements and books before considering an adjustment to the *pendente lite* support.

There is no transcript of the evidence but the record does contain a rather sketchy statement of the evidence which reads in pertinent part:

4. The Defendant testified that he was in the antique business. His business consisted of buying and selling antiques. He also traveled across the county and bought and sold antiques [at] various trade shows throughout the year. The Defendant produced a copy of his 1998 tax return in which he testified that his business showed a loss of $3,233.00 for the calendar year 1998. He further testified that the antique business had been slow and that he did [not] know how much he would be able to make for the calendar [year] 1999. He testified that [in]1997[,] which was his best year in a long time in the antique business, he showed a net profit of $12,561.00. The Defendant testified that he began the antique business in 1984. He further testified that the Complainant only participated approximately ten (10) months in the antique business.

5. The Defendant further testified that his current monthly income as of July 12, 1999 was only what he was receiving from his retirement and his VA disability pay. He filed an Income and Expense Statement with the Court, showing that he needed $2,524.47 each and every month to meet his obligations. The Defendant was already paying temporary child support and alimony in the amount of $797.00

to the Complainant each and every month. Further he was making the monthly mortgage payment in the amount of $965.00. Also, he was paying all of the household expenses.

\* \* \* \* \*

The Defendant testified that because of the stress associated with going through this that over the past several months he has been unable to successfully work in his antique business. He has been mentally and physically unable to focus on the business.

\* \* \* \* \*

The Complainant testified that in 1998 the business could have made approximately $5,000.00 per month, showing [a] gross profit of $3,300.00 per month. However, the Complainant provided no proof to the Court to verify these figures.

13. The Complainant testified that the Defendant removed approximately $30,000.00 worth of property relating to the antique business, from the marital home at the time of the separation. The Complainant valued this property based on her limited knowledge of the antique business. The Complainant provided no proof to the Court to verify this figure.

Husband's 1997 and 1998 tax returns are contained in the record and marked as trial exhibits. Schedule C of Husband's 1997 tax return, indicating profit or loss from business, reflects gross sales in 1997 of $68,902.00, gross income of $39,604.00, and a profit of $15,467.00. Husband's 1998 Schedule C reflects gross sales of $21,595.00, gross income of $13,535.00 and a $3,233.00 loss. Husband argues that the trial court focused on the 1997 tax return, ignoring the 1998 return or any testimony by Husband regarding the business in 1999. Husband contends that the trial court should have at least averaged the 1997 and 1998 figures for a more accurate estimation of his income.

The findings of the trial court indicate that the court did not find the testimony of Husband creditable regarding the future prospects of his business.

When the resolution of the issues in a case depends upon the credibility of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997); *see also McCaleb v. Saturn Corp.,* 910 S.W.2d 412, 415 (Tenn.1995). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See In re Estate of Walton v. Young*, 950 S.W.2d 956, 959

-8-

(Tenn.1997); **McCaleb**, 910 S.W.2d at 415. The trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses that contradicts the trial court's findings. **See Hawkins v. Ellis**, No. 02A01-9708-CH-00203, 1998 WL 704521, at * 4 (Tenn. Ct. App. Oct.12, 1998) (citing **Galbreath v. Harris**, 811 S.W.2d 88, 91 (Tenn. Ct. App.1990)).

**Brownyard v. Brownyard,** No. 02A01-9803-CH-00063, 1999 WL 418352, *7 (Tenn. Ct. App. June 22, 1999).

In finding that Husband is underemployed, the trial court made the threshold finding that is necessary to allow for the use of his potential income in determining child support. The trial court did not believe that the 1998 tax return reflected a typical year's earnings, and that the 1997 tax return was more in line with Wife's testimony regarding usual earnings of the business. It is within the discretion of the trial court to weigh the credibility of the Husband's testimony against Wife's and determine that her estimation of his income was more credible. The use of the 1997 tax return, along with Wife's testimony to determine Husband's potential income is not an abuse of the trial court's discretion. Consequently, we do not find that the evidence preponderates against the trial court's finding that Husband was underemployed. However, it is unclear how the $5,000.00 per month income is reduced to a "gross profit of $3,300.00 per month." The record does not reveal whether Husband's monthly social security deduction has been considered in arriving at that figure. Therefore, we remand this issue to the trial court for a specific determination of Husband's monthly income and for application of same to the Tennessee Child Support Guidelines.

Husband's second issue is whether the trial court erred in awarding Wife rehabilitative alimony. Husband contends that the award exceeds her need and his ability to pay. The trial court awarded Wife $550.00 per month rehabilitative alimony for five (5) years to begin on August 1, 1999. Husband contends that his monthly income is $1,303.75. He asserts that when his alimony and child support obligations are factored in, he suffers a $2,529.47 loss each month. Husband contends that Wife has a net income of $301.16 after expenses, and, including the alimony award, her surplus monthly income rises to $1,501.16. Husband asserts that Wife is trained as a surgical technician. He also contends that Wife does not need the support and that the issue should be remanded for alimony to be calculated based either upon his sworn testimony regarding his income or an average of his income over the past two years.

Wife asserts that the trial court did not abuse its discretion in awarding her five years rehabilitative alimony. Wife contends that she has a need to re-establish herself in the job market. Wife asserts that Husband has an earning capacity of $4,000.00 to $5,000.00 per month, while she has spent approximately nine years caring for the home and the child, Christopher, who suffers from ADHD. Wife asserts that the trial court appropriately considered fault in making its determination regarding alimony, pointing out that the divorce was awarded to Wife on the grounds of inappropriate marital conduct.

Guidelines for the determination of alimony are set forth in T.C.A. § 36-5-101 (d) (Supp. 1997). The trial court is afforded wide discretion concerning the award of alimony, and an appellate court should reverse the trial court's findings only in instances in which this discretion "has manifestly been abused." *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989)(citations omitted). Although there is no absolute formula for determining an award of alimony, the need of the spouse seeking support is one of the more important factors. The obligor spouse's ability to pay is also a factor to consider, *Cranford v. Cranford,* 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989), as well as fault of the obligor spouse in the termination of the marriage. *Gilliam v. Gilliam,* 776 S.W.2d 81, 86 (Tenn. Ct. App.1988). The spouse obtaining the divorce should not be left in a worse financial situation than he/she was before the other spouse's misconduct brought about the breakup of the marriage. *See Long v. Long,* 957 S.W.2d 825, 830 (Tenn. Ct. App. 1997); *Shackleford v. Shackleford,* 611 S.W.2d 598, 601 (Tenn. Ct. App.1980). Tennessee courts have shown a preference for rehabilitative alimony over other types of alimony because one goal is to ultimately sever the ties between the parties so they will no longer be dependent upon one another and can "be relieved of the impediments incident to the dissolved marriage...." *Herrera v. Herrera,* 944 S.W.2d 379, 387 (Tenn. Ct. App. 1996) (citing *Self v. Self*, 861 S.W.2d 360, 361 (Tenn.1993)).

The award of rehabilitative alimony to Wife is not an abuse of discretion. Wife's income and expense statement at the time of trial showed a monthly net income of $1,720.00. The statement indicates that Wife's monthly expenses, excluding the expenses of the child, are approximately $870.00 per month. The final order awards the marital home to Wife and makes her responsible for monthly mortgage payments. Husband's income and expense statement filed at the time of trial indicates that the mortgage payment, which he was responsible for at the time of trial, is $965.00 per month, and the utilities on the home are approximately $249.93 per month. Upon Wife's assumption of the monthly mortgage payment and home utilities, her monthly expenses are thereby increased by approximately $1,214.93 for total monthly expenses of approximately $2,084.93. As Wife's net income is approximately $1,720.00, we believe that an award of $400.00 per month to bring her net monthly income to a total of $2,120.00, is an amount sufficient but not excessive to meet her monthly expenses. Accordingly, we modify the trial court's award of rehabilitative alimony from $550.00 to $400.00.

Husband next asserts that the trial court erred in the distribution of marital debt. Husband contends that he was ordered to pay all of the marital debt with the exception of Wife's Citibank credit card and her Bravo card, yet he did not incur all of the remaining marital debt and did not solely receive all the benefits from such debt. Husband contends that financial records disclose Wife is much more able to assume the marital debts. Husband contends that at the very least, the marital debt should be divided more evenly among the parties.

Wife is to assume the debt on the marital home. In addition, her share of marital property was debited by $5,000.00 to compensate Husband for a credit card advance that she made. The statements filed pursuant to local rule 18.02 provided no assistance as to the total amount of debt each party assumed, as neither set out debt balances, and the record is unclear as to what marital debt remained in addition to that specifically addressed by the trial court.

A trial court's decision on distribution of marital property in a divorce proceeding is presumed correct unless evidence preponderates otherwise. Tenn. R. App. P. 13(d). Husband has not produced specific proof with regard to the marital debt. Consequently, we find that the evidence does not preponderate against findings of the trial court with regard to the distribution of marital debt.

In Husband's fifth issue, he contends that the trial court erred in the valuation of marital property. Husband asserts that his valuation of business items in the basement of the marital home at $2,500.00 was based on sixteen years of experience in the antique business. Husband characterizes Wife's valuation of these items at $30,000.00 as a "wild guess" based upon ten months of work in the antique business. Husband asserts that it was an abuse of discretion by the trial court to opt for the valuation of the Wife, where the Husband's knowledge and experience in the antique business is clearly superior.

The valuation of a marital asset is a fact driven inquiry. *Kinard v. Kinard,* 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). The value of marital assets is to be determined by considering all relevant evidence, and each party bears the burden of bringing forth competent evidence. *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App.1987). If there is conflicting evidence of value, the trial judge may assign a value within the range of values supported by evidence. *Ray v. Ray,* 916 S.W.2d 469, 470 (Tenn. Ct. App.1995). On appeal, the trial judge's factual findings are presumed correct unless the evidence preponderates against them. *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. Ct. App.1996).

The trial court found in pertinent part:

> 25. That the Complainant testified that the Defendant removed approximately $30,000.00 worth of property relating to this business from the marital home. That there were approximately eighty (80) empty boxes remaining in the home which the Complainant testified had previously contained the items which were part of the business. The Defendant left approximately $500.00 worth of items in the home which has not been removed to this date.
>
> 26. The Defendant testified that there was not $30,000.00 worth of items removed from the home but that he only removed approximately $2,000.00 worth of goods. The Defendant never explained why he left eighty (80) empty boxes in the basement with the appearance that the items were still there. The Defendant agreed that there was approximately $500.00 worth of items left in the basement. The Court does not find this believable since the remaining $500.00 worth of items would be one fifth of the total value of the goods if the Defendant took only $2,000.00 worth of property. The Court finds that if there had only been $2,500.00 worth

of total property, the Defendant most likely would have taken all of the property. The Court finds it believable that there was $30,000.00 worth of property in the basement.

We believe this to be a credibility issue, and therefore defer to the judgment of the trial court, who had "the opportunity to observe the witnesses in their manner and demeanor while testifying" and who "is in a far better position than this Court to decide those issues." ***See Brownyard, supra.*** Accordingly, we affirm the trial court with regard to the valuation of marital assets.

Husband's sixth issue addressed whether the trial court erred by requiring him to pay Wife's attorney's fees. An award of attorney fees constitutes alimony *in solido*. ***Herrera v. Herrera,*** 944 S.W.2d at 390; ***Cranford v. Cranford***, 772 S.W.2d at 52, The decision whether or not to award attorney's fees is within the sound discretion of the trial court and "will not be disturbed upon appeal unless the evidence preponderates against such a decision." ***Kincaid v. Kincaid,*** 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995); *see* Rule 13(d) Tenn. R. App. P.

As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the relevant factors enumerated in T.C.A. § 36-5-101(d). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. ***Umstot v. Umstot*** 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997); ***and Duncan v. Duncan***, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984). Where the court awards the wife alimony *in solido* adequate for her needs and attorneys fees, it may not be proper for the trial court to make an additional award of alimony *in solido* for payment of the wife's attorneys fees. ***Id.***

> These awards are appropriate, however, only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, ***Houghland v. Houghland,*** 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992); ***Ingram v. Ingram,*** 721 S.W.2d at 264, or would be required to deplete his or her resources in order to pay these expenses. ***Harwell v. Harwell,*** 612 S.W.2d 182, 185 (Tenn. Ct. App 1980).

***Brown v. Brown,*** 913 S.W.2d 163, 170.(Tenn. Ct. App. 1994). Where one party has been awarded additional funds for maintenance and support, and such funds are intended to provide the party with a source of future income, that party need not be required to pay legal expenses by using assets that will provide for future income. ***Batson v. Batson***, 769 S.W. 2d 849, 862 (Tenn. Ct. App. 1988). Thus, where the wife has demonstrated that she is financially unable to procure counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorneys fees. ***Harwell v. Harwell,*** 612 S.W.2d 182, 185 (Tenn. Ct. App.1980); ***Palmer v. Palmer,*** 562 S.W.2d 833, 839 (Tenn. Ct. App.1977); ***Ligon v. Ligon,*** 556 S.W.2d 763, 768 (Tenn. Ct. App.1977).

In the instant case, the trial found with regard to Wife attorney's fees:

41. That the Complainant was forced to file this divorce in order to get pendente lite support for herself and her minor child and to further receive temporary custody of this minor child. The divorce was predicated on the Defendant's fault in this marriage and the Defendant is ordered to pay $1,000.00 of the Complainant's attorney's fees.

Wife has been awarded no alimony *in solido* except for the award of her attorney's fees. The award of rehabilitative alimony is to provide for Wife's future support, and she should not be required to deplete her future support in paying attorney's fees. Accordingly, we affirm the order of the trial court granting Wife's attorney's fees of $1,000.00.

Husband's seventh issue is whether the trial court erred in awarding Wife fifty percent of his military retirement benefits. Husband contends that the trial court failed to establish the portion of his military retirement subject to a division as marital property, because it did not limit the division of retirement benefits to those that accrued during the period of the marriage.

Marital property includes both vested and unvested retirement benefits which accrued during the marriage, and is subject to division under T.C.A. § 36-4-121 (a)(1). In **Cohen v. Cohen,** 937 S.W.2d 823, 830 (Tenn. 1996), the Court said:

> Three helpful observations made by the Court of Appeals in **Kendrick,** [**Kendrick v. Kendrick,** 902 S.W.2d 918 (Tenn. Ct. App. 1994)] bear repeating:
>
>> 1. Only the portion of retirement benefits accrued during the marriage are marital property subject to equitable division.
>>
>> 2. Retirement benefits accrued during the marriage are marital property subject to equitable division even though the non-employee spouse did not contribute to the increase in their value.
>>
>> 3. The value of retirement benefits must be determined at a date as near as possible to the date of the date of the divorce.

**Cohen,** at 830.

In **Kendrick v. Kendrick, supra**, the Court determined that the wife should receive a portion of the husband's military retirement pay, and that her share should be based on the number of years of service credit that the husband earned during the marriage. **Kendrick,** 902 S.W.2d at 926.

-13-

In the instant case, Husband retired from the United States Army with more than twenty years and seven months service. The trial court ordered that Wife should receive fifty percent of Husband's retirement pay. During thirteen years of Husband's service, he was married to Wife, which is sixty-five percent of 20 years. Therefore, we modify the trial court's order to make only sixty-five percent of Husband's military retirement marital property, subject to division. Husband's total military benefits are $966.75 per month. Sixth-five percent of Husband's total military benefit is $628.39, and fifty percent of that amount is $314.19. Therefore, we modify the trial court's order and award Wife $314.19 per month of Husband's military retirement benefit. Since the Husband's military retirement benefits constitute a part of the Husband's income used to calculate child support under the guidelines, it is necessary that the child support be modified accordingly. The modification to Husband's military retirement benefits should be taken into consideration on remand in determining child support.

Husband's final issue is whether the trial court erred in calculating the award of funds in the parties joint bank account. With regard to the division of those funds the trial court ordered:

> 18. That the parties had $14,600.00 in a joint bank account of which the Defendant took $14,000.00. The Complainant lived off of $6,000.00 including a $5,000.00 cash advance on a credit card, the Court is not satisfied that the $5,000.00 was repaid by the Complainant to the Defendant to be paid against this debt.

> 19. That the [$14,000.00 that the] Defendant took plus the $5,000.00 cash advance that the Complainant took would total $19,000.00. Equally divided between the parties would be $9,500.00 to each party. Since the Complainant received only $5,000.00 off of the credit card cash advance, there is a remaining balance of $4,500.00 to equally divide this sum between the two parties. The Complaint is awarded a judgment for this amount for which execution may issue.

The evidence does not preponderate against this division as a fair and equitable division pursuant to T.C.A § 36-4-121(a)(1). Accordingly, we affirm the property division of the trial court.

In sum, the order of the trial court is modified to award rehabilitative alimony to Wife in the amount of $400.00 per month for five years and further modified to award Wife, as part of the division of marital property, the sum of $314.19 per month as her part of Husband's military retirement pay. The award of child support is reversed, and the case is remanded for the trial court to determine Husband's income and make the appropriate award of child support consistent with this Opinion. Pending this determination by the trial court, the present award of child support shall remain in full force and effect. The decree is in all other respects affirmed, and the case is remanded to the trial court for such further proceedings, including entry of an order by the trial court providing that Wife is entitled to receive her part of the retirement payments directly from U. S. Army in

accordance with 10 USC Sec.1408 (d) (1).  Costs of the appeal are assessed to the appellant, James Douglas Allen, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.